## STATE OF MINNESOTA v. J. SEGEL.[1]

### April 24, 1895.

### No. 9538.

**License—"Second-Hand Goods."**

> The charter of Minneapolis authorizes the city council to make and enforce ordinances to license and regulate "dealers in second-hand goods." *Held*, this and the ordinance passed pursuant thereto include dealers in second-hand furniture.

**Sufficiency of Complaint—"Divers Other Articles."**

> The complaint charged that the defendant was unlawfully engaged in the business of "dealer in second-hand goods, to wit, second-hand furniture, carpets, stoves, and divers other articles and things." *Held*, the clause "divers other articles and things " is void for uncertainty, but the prosecution can prove, under such complaint, that the defendant kept in his store, apparently exposed for sale, various articles which are held to be included in the general term "second-hand furniture," and that he also so kept "second-hand tools."

Appeal by defendant from an order of the municipal court of Minneapolis, Mahoney, J., denying a motion for a new trial. Affirmed.

[1] Reported in 62 N. W. 1134.

*S. Meyers* and *Wm. H. Donahue*, for appellant.
*David F. Simpson* and *M. D. Purdy*, for the State.

CANTY, J.[2] The charter of Minneapolis gives the city council power to make and enforce ordinances to license and regulate "all auctioneers, pawnbrokers, dealers in second hand goods, junk dealers, * * * and provided further, that the power to regulate, above given, shall be construed to include among other powers, the power to define who shall be considered as auctioneers, pawnbrokers, dealers in second hand goods and junk dealers." Sp. Laws 1881, c. 76, subc. 4, § 5, as amended by Sp. Laws 1883, c. 3, § 10. Pursuant to these charter provisions the city council passed an ordinance requiring "every person who shall engage in the business of pawnbroker, dealer in second-hand goods, or junk dealer" to obtain a license agreeably to the ordinance pertaining to licenses, and imposing several other restrictions and regulations on these three classes of business. The defendant was charged with violating this ordinance in this: that he "unlawfully and wrongfully engaged in the business and occupation of dealer in second-hand goods, to wit, second-hand furniture, carpets, and stoves, and divers other articles and things," at a certain place in the city, without having first obtained a license so to do. He was convicted, and from an order denying his motion for a new trial he appeals.

1. Neither the charter nor the ordinance defines who shall be considered "dealers in second-hand goods," and appellant contends that the term does not include "dealers in second-hand furniture," and that it was not intended, either by the legislature or the city council, to require dealers in second-hand furniture to take out a license. The term "second-hand goods" is broad enough to include "second-hand furniture." But if second-hand furniture dealers usually confined their business to the buying and selling of bulky second-hand furniture, composed principally of wood and metal, there would not be the same reason for imposing on them police regulations, or the same reason for preventing unscrupulous persons from engaging in the business. But such furniture dealers usually buy and sell carpets, rugs, bedding, and other articles, the traffic in which should be subject to strict sanitary regulations. They also usually buy and

[2] Buck, J., absent, took no part.

sell second-hand dishes, silverware, cutlery, tools, and other articles,. the traffic in which should be subject to strict regulations, to prevent facility for disposing of such articles when stolen. Taking. these things into consideration, we are of the opinion that the legislature and city council both intended the term "second-hand goods" to include "second-hand furniture." The charter did not require the city council to define "who shall be considered dealers in second-hand. goods" as a condition of regulating such dealers. The council can define or limit the class to which the ordinance shall apply, if they see fit. But they have not seen fit to do so; the language of the ordinance is as broad as that of the charter.

2. On the trial the defendant "objected to the admission of any testimony as to any articles other than those specially enumerated in the complaint," which objection was overruled, and defendant excepted. The witness answered that he saw in defendant's store' "second-hand furniture, second-hand carpets, second-hand stoves, second-hand ranges, second-hand rugs, second-hand tools, and second-hand dishes." Under the charge in the complaint the defendant could only be convicted of dealing in such articles as came within the designation "second-hand furniture, carpets, and stoves." The clause,. "and other articles and things," is void for uncertainty. "Furniture" is a word of very broad meaning, and includes all of the articles. mentioned by the witness except "second-hand tools." See Endicott v. Endicott, 41 N. J. Eq. 93, 3 Atl. 157; Kelly v. Powlet, Amb. 605; Nicholls v. Osborn, 2 P. Wms. 419; 1 Jarm. Wills (758), 713. But it is held by the majority of the court that it does not follow that the prosecution could not show that defendant kept second-hand tools in his store; that this proof tended to throw light on the purpose for which he kept his store, and kept therein the articles charged in the complaint; that it tended to show the character of his business. The crime charged was not a single purchase or sale, but the practice of buying and selling certain kinds of such goods; and the evidence that there were in his store other kinds of second-hand goods, to wit, tools, tends to prove such practice.

I cannot agree with the majority on this point. In my opinion,. the prosecution has no right in this way to set up one-half or one-quarter of an entire offense, and then prove the whole. It nowhere

appears how much of this alleged second-hand stock consisted of tools, and how much of it consisted of the other articles enumerated by the witness. The second-hand tools might have formed the principal part of his stock, and not an incidental or minor item.

The order appealed from is affirmed.

---

Upon application for a reargument the following opinion was filed:

PER CURIAM. One of the grounds of the motion for reargument is that the court did not decide the point made in the argument that there is not sufficient evidence to sustain a conviction. The point was in fact decided by the court, but by inadvertance such decision was not put in the opinion. While the evidence is short and not very full, it is wholly uncontradicted. There was no cross-examination and no evidence in rebuttal. We are of the opinion that the evidence was sufficient to sustain the conviction.